

# LABORERS TRUST AGREEMENTS

LABORERS HEALTH AND WELFA
LABORERS PENS
LABORERS VACATION - HOLID
LABORERS TRAINING AND RETRAIN

TRUST FUN
FOR NORTHERN CALIFORN

DECEMBER 31, 197

EXHIBIT D

**GENERAL INDEX**

Health and Welfare Trust Fund...............Page  3

Pension  Trust Fund........................Page 31

Vacation - Holiday Trust Fund...............Page 63

Training and Retraining Trust Fund..........Page 95

# HEALTH

# and

# WELFARE

# TRUST FUND

signed by the Employers and served on the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed and the Union or Employers, as the case may be, of such removal.

*(Amended December 31, 1975)*

Section 6. If any Employer Trustee dies, resigns or is removed from office, a successor trustee shall be appointed forthwith by an instrument in writing signed by the Employers. If any Employee Trustee dies, resigns or is removed from office, a successor trustee shall be appointed forthwith by an instrument in writing signed by the Executive Officer of the Union and bearing the Union seal.

*(Amended December 31, 1975)*

## ARTICLE IV

### Functions and Powers of Board of Trustees

Section 1. The Board of Trustees acting jointly shall have the power to control and manage the assets, operations and administration of the Fund and the Plan as a fiduciary and shall exercise such authority with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent Board acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(a) appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund,

(b) enter into an agreement allocating among Trustees such specific responsibilities, obligations or duties as the Board shall determine, after receiving and considering the written reports and recommendations of the consultant-actuary, co-legal counsel and the qualified public accountant engaged by the Fund, may be properly so allocated,

(c) designate pursuant to the same procedure persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under this Trust Agreement or the Plan,

(d) employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan, or

(e) do any one or more of the foregoing.

Any person or entity so appointed, designated or em-

ployed shall act solely in the interests of the participants and beneficiaries of the Fund and Plan.

*(Amended August 28, 1964 and December 31, 1975)*

Section 2. All contributions to the Plan or the Fund shall be due and payable at San Francisco, California and shall be paid to, received and held subject to the trust established by this Trust Agreement and all the terms and provisions hereof. The acceptance and cashing of any checks for such contributions, and the disposition of the moneys covered thereby in accordance with this Trust Agreement, shall not release or discharge the individual employer from his or its obligation under the collective bargaining agreement for hours worked under said agreement for which no contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment thereto.

*(Amended August 28, 1964)*

Section 3. The Board of Trustees shall have the power in the name of the Fund, in the name of its joint delinquency committee or jointly with other funds, or otherwise as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court or otherwise, the prompt payment of contributions to the Fund, including payments due to delinquencies as provided in Section 8 of Article II, without being limited or restricted by any grievance or arbitration procedures provided in a Collective Bargaining Agreement, and to assert and enforce all priorities, lien rights, and other claims or rights with respect to any contributions or payments belonging to the Fund, this Trust or any of its beneficiaries, including the right to file priority and other claims in bankruptcy. If any individual employer defaults in the making of such contributions or payments and if the Board consults or causes to be consulted legal counsel with respect thereto, there shall be added to the obligation of the individual employer who is in default, reasonable attorneys fees, court costs and all other reasonable expenses incurred in connection with such suit or claim, including any and all appellate proceedings therein.

*(Amended August 28, 1964 and December 31, 1975)*

Section 4. The Board of Trustees shall establish the Health and Welfare Plan, which shall consist of (a) the benefits provided by and the other terms and conditions of the contracts and insurance policies entered into pursuant to the provisions of this section and, in the alternative or in combination, (b) such written statement of benefits and rules and regulations as may be established by the Board pursuant to this section to govern the direct payment of benefits. The Board shall promptly use the moneys available in the Fund first to provide the benefits specified in the Plan. The Board shall have power to

enter into contracts and procure insurance policies necessary to place into effect and maintain all or any part of the Plan, to terminate, modify or renew any such contracts or policies subject to the provisions of the Plan, and to exercise and claim all rights and benefits granted to the Board or the Fund by any such contracts or policies. Any such contract may be executed in the name of the Fund, and any such policy may be procured in such name. If, after reviewing the matter, the Board deems it advisable to do so, the Board shall also have power (c) to provide for the direct payment out of the Fund of all or any part of the benefits to be furnished under the Plan and (d) to provide for contributions by employees to the Fund to defray all or any part of the cost of any such benefits, but only to the extent that such payment or contribution is permitted by any applicable laws and regulations and subject to the terms and conditions of any such law or regulation. In the event that the Board elects to provide for the direct payment of any benefit or benefits the detailed basis on which such payments are to be made shall be set forth in a written statement, which statement, and any amendment or modification thereof, shall be signed on behalf of the Board by the Chairman and Co-Chairman thereof, and when so signed shall be a part of this agreement for all purposes of the Labor Management Relations Act, as amended, or of any other law or regulation. An accurate summary of such benefit or benefits, and the terms and conditions of the payment thereof, shall be printed and made available to each active or retired employee who is eligible for any such benefit or benefits.

*(Amended August 28, 1964 and November 19, 1974)*

**Section 5.** The Board of Trustees shall have power:

(A) To pay out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Health and Welfare Plan.

(B) To establish and accumulate such reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund, including the maintenance in effect of the Health and Welfare Plan.

(C) To provide a procedure for establishing and carrying out the funding policy and method consistent with the objectives of the Health and Welfare Plan and the requirements of ERISA in adopting a plan of benefits and in amending the plan.

*(Amended December 31, 1975)*

(D) To employ such executive, consultant, accounting, administrative, clerical, secretarial and legal personnel and other employees and assistants, as may be necessary in connection with the administration of the Fund and the Health and Welfare Plan and to pay or cause to be paid, out of the Fund, the compensation and necessary expenses of such personnel and assistants and the cost

of office space, furnishings and supplies and other essentials required in such administration. If the Board i unable to agree upon the employment of either a consultant or an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select either a consultant or an attorney, or both, as the case may require, who shall be directed to act jointly with each other in connection with the administration o the Fund, and the reasonable cost of such advice or services shall be paid from the Fund.

(E) To incur and pay out of the Fund any other expense reasonably incidental to the administration of the Fund or the Health and Welfare Plan.

(F) To compromise, settle, or release claims or demands in favor of the Fund on such terms and conditions as the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the waiver of all or any part of the liquidated damages portion of any contribution or contributions upon such terms and conditions as the Board determines would be in the interest of the Fund and its participants and beneficiaries; provided, however, that this clause shall not excuse any violation of any of the collective bargaining agreements.

*(Amended December 31, 1975)*

(G) If no investment manager is designated and appointed by the Board, to invest and reinvest or cause to be invested and reinvested the assets of the Fund, in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law

*(Amended August 28, 1964 and December 31, 1975)*

(H) To purchase, exchange, lease, mortgage or otherwise hypothecate, or otherwise acquire, or cause to be purchased, exchanged, leased, mortgaged or otherwise hypothecated, or otherwise acquired, any property, real personal or mixed, on such terms as it may deem proper and to execute and deliver or cause to be executed and delivered, any and all instruments in connection therewith.

*(Amended August 28, 1964)*

(I) To sell, exchange, lease, convey or otherwise dispose of or to cause to be sold, exchanged, leased, conveyed or otherwise disposed of, any property of any kind forming a part of the Fund upon such terms as it may deem proper and to execute and deliver or cause to be executed and delivered, any and all instruments of conveyance or transfer in connection therewith.

*(Amended August 28, 1964)*

12                                                        13



(J) To borrow money, and to encumber or hypothecate real or personal property by mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise; to borrow money on the credit of the trust estate; and to purchase real or personal property subject to, and assume the obligation secured by, mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise.
*(Amended December 31, 1975)*

(K) To construe the provisions of this Trust Agreement and the Plan and any such construction adopted by the Board in good faith shall be binding upon any and all parties or persons affected thereby.
*(Amended August 28, 1964)*

(L) To pay or cause to be paid any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon or with respect to the Fund or the Plan.
*(Amended August 28, 1964)*

(M) To maintain or cause to be maintained, on a current basis, all actuarial data, records and information in connection with the administration of the Plan and to cause the books and records to be checked and evaluated annually, or more often if the Board so determines, by the Fund consultant-actuary or consultant-actuaries as the case may be, whose reports shall be available for inspection by interested persons at reasonable times and upon proper notice, at such place or places as may be designated by the Board; and the Board shall have the right to rely upon all such reports and records.
*(Amended August 28, 1964)*

(N) To prepare or cause to be prepared such reports, descriptions, summaries and other information as are or may be required by law or as the Board in its discretion deems necessary or advisable and to file and furnish such reports, descriptions, summaries and information to participants and their beneficiaries, Unions, the Employers and individual employers, the Trustees, or other persons or entities, including government agencies, as required by law.
*(Amended August 28, 1964 and December 31, 1975)*

(O) To maintain or cause to be maintained such bank account or accounts as may be necessary or advisable in the administration of the Fund or the Plan, and to designate the person or persons authorized to sign checks and withdrawal orders on any such accounts.
*(Amended August 28, 1964)*

(P) With or without any of the contracts or policies mentioned in Section 4 of this Article, to pay or cause to be paid all or any part of the benefits provided in the Plan, to the persons entitled thereto under the Plan, and in accordance with the terms and provisions of the Plan, which shall be the basis on which payments are made from the Plan.
*(Amended December 31, 1975)*

(Q) To adopt and prescribe reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Plan, governing the reporting of contributions, the entitlement to benefits, the method of applying for benefits, and any and all other matters in connection with the Fund and the Plan.
*(Amended August 28, 1964)*

(R) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement or the Plan.
*(Amended August 28, 1964)*

Section 6. The Board of Trustees shall engage an independent qualified public accountant on behalf of all Plan participants as required by ERISA.
*(Amended December 31, 1975)*

Section 7. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from such companies as the Board shall determine.
*(Amended August 28, 1964, February 20, 1968 and June 17, 1975)*

Section 8. All checks, drafts, vouchers or other withdrawals of money from the Fund shall be authorized in writing or countersigned by at least one Employer Trustee and one Employee Trustee.

Section 9. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Health and Welfare Plan. The Board may require the Employers, any signatory association, any individual employer, the Union, any employee or any other beneficiary under the Health and Welfare Plan to submit to it any information, data, report or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, that the Union shall not be required to submit lists of membership. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, report or documents. Upon request in writing from the Board, any Individual Employer will permit a Trust Fund Auditor

14

15

to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, not less than two (2) working days after such request, and to examine and copy such books, records, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund.

*(Amended August 1, 1974)*

Section 10. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once each year by an independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan, as is required by ERISA. The Board shall also make all other reports required by law. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time. Copies of such statement shall be delivered to the Employers, the Union and each trustee within five days after the statement is prepared.

*(Amended December 31, 1975)*

Section 11. The Board of Trustees may coordinate its activities in the administration of the Fund and the Health and Welfare Plan with the administrative activities of the boards of trustees of other trust funds and health and welfare plans to such extent as may be necessary or desirable to minimize administrative costs, eliminate unnecessary bookkeeping and other expenses for the individual employers and avoid or eliminate duplicating employer contributions or insurance coverage with relation to the same employee. The Board may agree to exercise and exercise any of its functions and powers jointly with any one or more of the board of trustees of such other trust funds, and it may agree to join with and join with any one or more of said boards in establishing a joint office or joint administrative personnel.

*(Amended April 5, 1965)*

## ARTICLE V

### Procedure of Board of Trustees

Section 1. The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any three members of the Board, may call a special meeting of the Board by giving written notice to all other trustees of the time and place of such meeting at least five days before the date set for the meeting. Any such notice of

special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the trustee at his address as shown in the records of the Board. Any meeting at which all trustees are present, or concerning which all trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

Section 2. The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. Such minutes need not be verbatim.

Section 3. The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this trust agreement except upon the vote of a majority of all ten of the trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all ten trustees without a meeting, as provided in section 5 of this Article. In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present at such meeting may vote on behalf of such absent trustee and if such Employer Trustees cannot all agree as to how the vote of such absent Employer Trustee shall be cast then it shall be cast as the majority of them shall determine or, in the absence of such majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at such meeting may vote on behalf of such absent trustee pursuant to the same method and in the same manner as above provided for Employer Trustees to cast the vote of any absent Employer Trustee.

Section 4. All meetings of the Board shall be held at the principal office of the Fund unless another place is designated from time to time by the Board.

Section 5. Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided such action has the concurrence of all of the trustees.

## ARTICLE VI

### General Provisions Applicable to Trustees

Section 1. The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent that such provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and thus to further the interests of the

# AMENDMENT NO. NINE

## LABORERS HEALTH AND WELFARE

### TRUST FUND FOR NORTHERN CALIFORNIA

*Trust Agmt*

Pursuant to the provisions of Article X, Section 1 of the Agreement establishing the Laborers Health and Welfare Trust Fund for Northern California, as amended, that Agreement is hereby amended and restated as follows:

### I

On Page 1, in the heading immediately under the word "California" insert "Revised, 1975".

### II

Recital 1 is revised to read as follows:

"The Employers, and the other employer organizations signatory to this Trust Agreement, are parties to collective bargaining agreements with the Union known respectively as the Laborers 46 Northern California Counties Master Agreement and the Laborers 46 Northern California Counties Tunnel Master Agreement, which provide that each individual employer covered by either of said Agreements shall pay hourly contributions for each hour paid and/or worked by employees under such agreement to the Laborers Health and Welfare Trust Fund for Northern California at rates specified from time to time in said Agreements."

-1-

-9-

the interests of the participants and
beneficiaries of the Fund and Plan."

XV

Article IV, Section 3 is amended by deleting the
first sentence in its entirety and inserting the following:

"The Board of Trustees shall have the
power, in the name of the Fund, in the
name of its joint delinquency committee
or jointly with other funds,/as in its
discretion may be deemed necessary or
desirable, to demand and enforce, by suit
in court or otherwise, the prompt payment
of contributions to the Fund, including
payments due to delinquencies as provided
in Section 8 of Article II, without being
limited or restricted by any grievance or
arbitration procedures provided in a
Collective Bargaining Agreement, and to
assert and enforce all priorities, lien
rights, and other claims or rights with
respect to any contributions or payments
belonging to the Fund,,this Trust or any
of its beneficiaries, including the right
to file priority and other claims in
bankruptcy."

or policies mentioned in Section 4 of this Article, to pay or cause to be paid all or any part of the benefits provided in the Plan, to the persons entitled thereto under the Plan, and in accordance with the terms and provisions of the Plan, which shall be the basis on which payments are made from the Plan."

(8)    A new Section 6 is added to Article IV reading as follows:

"Section 6.  The Board of Trustees shall engage an independent qualified public accountant on behalf of all Plan participants as required by ERISA."

XVII

Article IV, second Section 6 and Sections 7 through 10 are renumbered Sections 7 through 11, respectively.

XVIII

Article IV, section 9 is amended by striking commencing at line four the words "qualified certified public accountant to be selected by the Board" and inserting the following:

"independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan, as is required by ERISA."

XIX

Section 6 of Article V is deleted in its entirety.

-17-

beneficiary or other person shall be entitled
to notice of any such action or proceeding or
to service of process therein.  Any final judg-
ment entered in any such action or proceeding
shall be binding upon all of the above-mentioned
parties so long as such judgment does not attempt
or purport to impose any personal liability
upon or against any party not joined or not
served in any such action or proceeding."

### XXV

Article IX, Section 1 is amended by inserting at the
end of the fifth line the words "the Administrative Office of".

Except as herein expressly modified, all of the terms
and provisions of the Trust Agreement, as amended, shall
continue in full force and effect.

Executed the 31st day of December, 1975.

EMPLOYERS

The Associated General
Contractors of California, Inc.

By: _Richard B. Nunn_

UNION

Northern California District Counc
of Laborers, affiliated with the
Laborers' International Union of
North America, AFL-CIO

By: _Sal Minerva_

By: _C N Johnson_

By: _Geo Stadfelder_

PENSION

TRUST

FUND

the Trustees shall determine. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice versa.

**Section 3.** Each Trustee shall serve until his death, resignation or removal from office.

**Section 4.** A Trustee may resign at any time by serving written notice of such resignation upon the Secretary of the Board of Trustees at least thirty (30) days prior to the date on which such resignation is to be effective. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board and the Employer and Union of such resignation.

*(Amended December 31, 1975)*

**Section 5.** Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the Employer and served on the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed and the Union or Employer, as the case may be, of such removal.

*(Amended December 31, 1975)*

**Section 6.** If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be appointed forthwith by an instrument in writing signed by the Employer. If any Employee Trustee dies, resigns or is removed from office, a successor Trustee shall be appointed forthwith by an instrument in writing signed by the Executive Officer of the Union.

*(Amended December 31, 1975)*

**Section 7.** The initial Employees Trustee shall be:
CHARLES ROBINSON
PERCY F. BALL
HARRY WHITEHOUSE
PHILIP THORPE
JAY JOHNSON

The initial Employer Trustees shall be:
A. E. HOLT
W. F. AMES, JR.
G. S. HERRINGTON
MORRIS K. DALEY
CARL K. LAWRENCE

40

## ARTICLE IV

### Functions and Powers of Board of Trustees

**Section 1.** The Board of Trustees acting jointly shall have the power to control and manage the assets, operations and administration of the Fund and the Plan as a fiduciary and shall exercise such authority with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent Board acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(a) appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund,

(b) enter into an agreement allocating among Trustees such specific responsibilities, obligations or duties as the Board shall determine, after receiving and considering the written reports and recommendations of the consultant-actuary, co-legal counsel, the investment counselor or investment manager and the qualified public accountant engaged by the Fund, may be properly so allocated,

(c) designate pursuant to the same procedure persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Plan,

(d) employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan, or

(e) do any one or more of the foregoing. Any person or entity so appointed, designated or employed shall act solely in the interests of the participants and beneficiaries of the Fund and Plan.

*(Amended December 31, 1975)*

**Section 2.** All Contributions to the Plan or the Fund shall be due and payable at San Francisco, California and shall be paid to, received and held by the Fund subject to the trust established by this Trust Agreement and all the terms and provisions hereof. The acceptance and cashing of any checks for such Contributions, and the disposition of the moneys covered thereby in accordance with this Trust Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours compensated under said Agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment thereto.

*(Amended December 31, 1975)*

**Section 3.** The Board of Trustees shall have the power, in the name of the Fund, in the name of its joint delinquency committee, or jointly with other funds, or

41

otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court or otherwise, the prompt payment of contributions to the Fund, including payments due to delinquencies as provided in Section 10 of Article II, without being limited or restricted by any grievance or arbitration procedures provided in a Collective Bargaining Agreement, and to assert and enforce all priorities, lien rights, and other claims or rights with respect to any contributions or payments belonging to the Fund, this Trust or any of its beneficiaries, including the right to file priority and other claims in bankruptcy. If any Individual Employer defaults in the making of such Contributions or payments and if the Board consults or causes to be consulted legal counsel with respect thereto, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorneys fees, court costs and all other reasonable expenses incurred in connection with such suit or claim, including any and all appellate proceedings therein.

(*Amended December 31, 1975*)

Section 4. Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay or cause to be paid out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Plan.

(B) To establish and accumulate such reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund, including the maintenance in effect of the Plan.

(C) To provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the Pension Plan and the requirements of ERISA in adopting a plan of benefits and in amending the plan.

(*Amended December 31, 1975*)

(D) To employ such executive, consultant, actuarial, accounting, administrative, clerical, secretarial and legal personnel and other employees and assistants, as may be necessary in connection with the administration of the Fund and the Plan and to pay or cause to be paid, out of the Fund, the compensation and necessary expenses of such personnel and assistants and the costs of office space, furnishings and supplies and other essentials required in such administration. If the Board is unable to agree upon the employment of either a consultant actuary or an attorney, pursuant to this clause, the Employer Trustees and the Employee Trustees may each select a consultant-actuary or an attorney, or both, as the case may require, who shall be directed to act jointly with each other in connection with the administration of the Fund,

and the reasonable cost of such advice or services shall be paid from the Fund.

(*Amended December 31, 1975*)

(E) To incur and pay or cause to be paid out of the Fund any other expense reasonably incidental to the administration of the Fund or the Plan.

(F) To compromise, settle, or release claims or demands in favor of or against the Fund on such terms and conditions as the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the waiver of all or any part of the liquidated damages portion of any Contribution or Contributions upon such terms and conditions as the Board determines would be in the interests of the Fund and its participants and beneficiaries; provided, however, that this clause shall not excuse any violation of any of the Collective Bargaining Agreements.

(*Amended December 31, 1975*)

(G) If no investment manager is designated and appointed by the Board, to invest and reinvest the assets of the Fund, in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law.

(*Amended February 15, 1972 and December 31, 1975*)

(H) To enter into contracts and procure insurance policies in its own name or in the name of the Fund, to provide any or all of the benefits specified in the Plan, to terminate, modify or renew any such contracts or policies subject to the provisions of the Plan, and to exercise and claim all rights and benefits granted to the Board or the Fund by any such contracts or policies.

(I) With or without any of the contracts or policies mentioned in paragraph (H) of this Section, to pay or cause to be paid all or any part of the benefits provided in the Plan, to the persons entitled thereto under the Plan, and in accordance with the terms and provisions of the Plan which shall be the basis on which payments are made from the Plan.

(*Amended December 31, 1975*)

(J) To borrow money, and to encumber or hypothecate real or personal property by mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise; to borrow money on the credit of the trust estate; and to purchase real or personal property subject to, and assume the obligation secured

42                                          43

by a mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise.
*(Amended December 31, 1975)*

(K) To purchase, exchange, lease, mortgage or otherwise hypothecate, or otherwise acquire, or cause to be purchased, exchanged, leased, mortgaged or otherwise hypothecated, or otherwise acquired, any property, real, personal or mixed, on such terms as it may deem proper, and to execute and deliver or cause to be executed and delivered, any and all instruments in connection therewith.

(L) To sell, exchange, lease, convey or otherwise dispose of or to cause to be sold, exchanged, leased, conveyed or otherwise disposed of, any property of any kind forming a part of the Fund upon such terms as it may deem proper and to execute and deliver or cause to be executed and delivered, any and all instruments of conveyance or transfer in connection therewith.

(M) To construe the provisions of this Trust Agreement and the Plan and any such construction adopted by the Board in good faith shall be binding upon any and all parties or persons affected thereby.

(N) To pay or cause to be paid any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon or with respect to the Fund or the Plan.

(O) To maintain or cause to be maintained, on a current basis, all actuarial data, records and information in connection with the administration of the Plan and to cause the books and records to be checked and evaluated annually, or more often if the Board so determines, by the Fund consultant-actuary or consultant-actuaries as the case may be, whose reports shall be available for inspection by interested persons at reasonable times and upon proper notice, at such place or places as may be designated by the Board; and the Board shall have the right to rely upon all such reports and records.

(P) To prepare or cause to be prepared such reports, descriptions, summaries and other information as are or may be required by law or as the Board in its discretion deems necessary or advisable and to file and furnish such reports, descriptions, summaries and information to participants and their beneficiaries, Unions, the Employers and individual employers, the Trustees, or other persons or entities, including government agencies, as required by law.

*(Amended December 31, 1975)*

(Q) To maintain or cause to be maintained such bank account or accounts as may be necessary or advisable in the administration of the Fund or the Plan, and to designate the person or persons authorized to sign checks and withdrawal orders on any such accounts.

44

(R) To adopt and prescribe reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Plan, governing the reporting of Contributions, the entitlement to pension benefits, the method of applying for pension benefits, and any and all other matters in connection with the Fund and the Plan.

(S) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement or the Plan.

Section 5. The Board of Trustees shall engage an independent qualified public accountant on behalf of all Plan participants as required by ERISA and an enrolled consultant-actuary on behalf of all Plan participants also as required by ERISA.
*(Amended December 31, 1975)*

Section 6. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from such companies as the Board shall determine.
*(Amended June 17, 1975)*

Section 7. All checks, drafts, vouchers or other withdrawals of money from the Fund shall be authorized in writing or countersigned by at least one Employer Trustee and one Employee Trustee.

Section 8. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plan. The Board may require the Employer, any Signatory Association, any Individual Employer, the Union, any affiliated local union, any Employee, Retired Employee or any other beneficiary under the Plan to submit to it any information, data, report or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, that neither the Union nor any affiliated local union shall be required to submit lists of membership. The parties agree that they will use their best efforts to secure compliance with any reasonable requests of the Board for any such information, data, report or documents. Upon request in writing from the Board, any Individual Employer will permit a Trust Fund Auditor to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, not less than two (2) working days after such request, and to examine and copy such books, records, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and

45

prompt payment of all sums required to be paid by him or it to the Fund.

*(Amended August 1, 1974)*

**Section 9.** The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once each year by an independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan, as is required by ERISA. The Board shall also make all other reports required by law. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time.

*(Amended December 31, 1975)*

**Section 10.** Compatible with equitable principles and to the extent that sound accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund and the Plan with the administrative activities of the governing board or boards of any other fund or funds, or plan or plans, established or to be established for employees in the building and construction industry to such extent and upon such terms as may be deemed necessary or desirable by the Board, including the entering into and performance of agreements or arrangements with any such board or boards providing for reciprocity or the transfer or exchange of credits or contributions between or among such funds or plans upon such terms as the Board may determine are for the best interests of the beneficiaries of the Plan.

*(Amended June 1, 1967)*

## ARTICLE V

### Procedure of Board of Trustees

**Section 1.** The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any two members of the Board, may call a special meeting of the Board by giving written notice to all other trustees of the time and place of such meeting at least five days before the date set for the meeting. Any such notice of special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address as shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

**Section 2.** The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings

and acts of the Board. Such minutes need not be verbatim.

**Section 3.** The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon the vote of a majority of all ten of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all ten Trustees without a meeting, as provided in section 5 of this Article. In the event of the absence of an Employer Trustee from a meeting of the Board, the Employer Trustees present at such meeting may vote on behalf of such absent Trustee and if such Employer Trustees cannot all agree as to how the vote of such absent Employer Trustee shall be cast then it shall be cast as the majority of them shall determine, or in the absence of such majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at such meeting may vote on behalf of such absent Trustee pursuant to the same method and in the same manner as above provided for Employer Trustees to cast the vote of any absent Employer Trustee.

**Section 4.** All meetings of the Board shall be held at the principal office of the Fund unless another place is designated from time to time by the Board.

**Section 5.** Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided such action has the concurrence of all the Trustees.

## ARTICLE VI

### Corporate Co-Trustee

**Section 1.** The Corporate Co-Trustee and any successor may be appointed by the Board of Trustees.

*(Amended December 31, 1975)*

**Section 2.** The Corporate Co-Trustee shall not be a representative of either the Employer or the Union.

**Section 3.** The duties, responsibilities, rights and powers of the Corporate Co-Trustee shall be such as may be delegated to it by the Board of Trustees, and the same shall be set forth in a contract between the Board of Trustees and the Corporate Co-Trustee. The Corporate Co-Trustee currently designated as a fiduciary and Corporate Co-Trustee is the Bank of America National Trust and Savings Association.

*(Amended December 31, 1975)*

46

47

*BASIC DOC.*

# AMENDMENT NO. EIGHT

# LABORERS PENSION TRUST FUND

# FOR NORTHERN CALIFORNIA

Pursuant to the provisions of Article XI, Section 1 of the Trust Agreement establishing the Laborers Pension Trust Fund for Northern California, as amended, that Agreement is hereby amended and restated as follows:

## I

On Page 1, in the hading immediately under the word "CALIFORNIA", insert "REVISED, 1975".

## II

Recital 1 is revised to read as follows:

"The Employer, and the other employer organizations signatory to this Trust Agreement, are parties to collective bargaining agreements with the Union known respectively as the Laborers 46 Northern California Counties Master Agreement and the Laborers 46 Northern California Counties Tunnel Master Agreement, which provide that each individual employer covered by either of said Agreements shall pay hourly contributions for each hour paid and/or worked by employees under such agreement to the Laborers Pension Trust Fund for Northern California at rates specified from time to time in said Agreements."

-1-

-10-

Article IV, Section 2 is amended as follows:

(1)   In lines three and four the words "Corporate Co-Trustee" are deleted and the word "Fund" inserted.

(2)   In line eleven the word "worked" is deleted and the word "compensated" is inserted.

### XIX

Article IV, Section 3 is amended by striking the first sentence in its entirety and inserting the following:

"The Board of Trustees shall have the
power, in the name of the Fund, in the
name of its joint delinquency committee,
or jointly with other funds, or otherwise,
as in its discretion may be deemed necessary
or desirable, to demand and enforce, by suit
in court or otherwise, the prompt payment
of contributions to the Fund, including
payments due to delinquencies as provided
in Section 10 of Article II, without being
limited or restricted by any grievance or
arbitration procedures provided in a
Collective Bargaining Agreement, and to
assert and enforce all priorities, lien
rights, and other claims or rights with
respect to any contributions or payments
belonging to the Fund, this Trust or any
of its beneficiaries, including the right

-11-

to file priority and other claims in
bankruptcy."

XX

Article IV, Section 4 is amended as follows:

(1)  Add a new paragraph (C) and renumber the
balance of the paragraphs.  The new paragraph (C) shall
read as follows:

"(C)  To provide a procedure for establish-
ing and carrying out a funding policy and
method consistent with the objectives of
the Pension Plan and the requirements of
ERISA in adopting a plan of benefits and
in amending the plan."

(2)  Existing paragraph (C) is amended as
follows:

(i)  In line two before the word "administrative"
insert "accounting."

(3)  Existing paragraph (E) is amended by insert-
ing in line three before the semi-colon the following:

such reports, descriptions, summaries and other
information as are or may be required by law
or as the Board in its discretion deems necessary
or advisable and to file and furnish such reports,
descriptions, summaries and information to par-
ticipants and their beneficiaries, Unions the
Employers and individual employers, the Trustees,
or other persons or entities, including govern-
ment agencies, as required by law."

(8)   A new Section 5 is added to Article IV reading as
follows:

"Section 5.   The Board of Trustees shall engage
an independent qualified public accountant on
behalf of all Plan participants as required by
ERISA and an enrolled consultant-actuary on be-
half of all Plan participants also as required
by ERISA."

XXI

Article IV, second Section 5 and Sections 6 through 9,
are renumbered Sections 6 through 10, respectively.

XXII

Article IV, Section 8 is amended by striking commencing
at line four the words "qualified certified public accountant to
be selected by the Board" and inserting the following:

"independent qualified public accountant engaged by
the Board on behalf of all Plan participants who
shall conduct such an examination of any financial

statel. .ts of the Fund and Plan,  .d of other
books and records of the Fund and Plan, as is
required by ERISA."

### XXIII

Section 6 of Article V is deleted in its entirety.

### XXIV

Article VI, Section 1 is amended in line two by striking
the word "shall" and inserting the word "may" and by inserting
the words "Board of" before the word "Trustees".

### XXV

Section 3 of Article VI is stricken in its entirety and
the following inserted:

Section 3.  The duties, responsibilities, rights
and powers of the Corporate Co-Trustee shall be
such as may be delegated to it by the Board of
Trustees, and the same shall be set forth in a
contract between the Board of Trustees and the
Corporate Co-Trustee.  The Corporate Co-Trustee
currently designated as a fiduciary and Corporate
Co-Trustee is The Bank of America National Trust
and Savings Association."

### XXVA

Article VII, second section 5 and sections 6
through 10 are renumbered sections 6 through
11 respectively.

### XXVI

Article VII, Section 8 is revised to read as
follows:

"Section 8.  Subject to and within the
limitations provided in ERISA, the Board
of Trustees may provide for the reim-

-19-

in any such action or proceeding shall
be binding upon all of the above-
mentioned parties so long as such
judgment does not attempt or purport
to impose any personal liability upon
or against any party not joined or not
served in any such action or proceeding."

## XXXI

Article X, Section 1 is amended by inserting at the
end of line six the words "the Administrative Office of" and
by deleting the last sentence in its entirety.

Except as herein expressly modified, all of the
terms and provisions of the Trust Agreement, as amended,
shall continue in full force and effect.

Executed the 31st day of December, 1975.

EMPLOYER

The Associated General
Contractors of California, Inc.

By: _Richard B Nunn_

UNION

Northern California District Counc
of Laborers, affiliated with the
Laborers' International Union of
North America, AFL-CIO

By: _Sal Minerva_

By: _CR Johnson_

By: _Geo Goodfellow_

# VACATION-HOLIDAY

# TRUST FUND

**Section 9.** Contributions to the Fund shall be due commencing September 1, 1962, for work on or after that date, and shall be payable in San Francisco, California, in regular monthly installments starting on or before October 15, 1962, and continuing from month to month thereafter, subject to the provisions of the Collective Bargaining Agreements. The Contribution payable on or before October 15, 1962, shall include all payments which have theretofore accrued for work performed during the period from September 1, 1962, up to the close of the Individual Employer's payroll period ending closest to the last day of September, 1962, and thereafter each monthly Contribution shall include all payments which have accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board of Trustees. The rate of Contribution made by the Union, or any affiliated local union, pursuant to regulations adopted by the Board of Trustees, shall be not less than the rate of Contributions called for by the Collective Bargaining Agreements.

**Section 10.** Each Contribution to the Fund shall be made promptly, and in any event on or before the 25th day of the calendar month in which it becomes payable, on which date said Contribution, if not then paid in full, shall be delinquent. If any Individual Employer fails to make his or its monthly Contribution in full on or before the 25th day of the month on four occasions within any twelve-month period, the Board of Trustees may provide by resolution that thereafter during the twelve-month period immediately following such resolution the 15th day of the month shall be the delinquency date for such Individual Employer. The parties recognize and acknowledge that the regular and prompt payment of Contributions to the Fund is essential to the maintenance in effect of the Plan, and that it would be extremely difficult, if not impracticable to fix the actual expense and damage to the Fund and to the Plan which would result from the failure of an Individual Employer to pay such monthly Contributions in full within the time above provided. Therefore, the amount of damage to the Fund and Plan resulting from any such failure shall be presumed to be the sum of $20 per delinquency or 10% of the amount of the Contribution or Contributions due, whichever is greater, which amount shall become due and payable to the Fund as liquidated damages and not as a penalty, in San Francisco, California, upon the day immediately following the date on which the Contribution or Contributions become delinquent and said delinquent Contribution or Contributions shall be increased by the amount of said liquidated damages. Such Contributions, as thus increased, shall be the payments specified in this Trust

70

Agreement and the Plan pursuant to ERISA as require to be made to the Fund.
*(Amended December 31, 1975)*

## ARTICLE III

### General Provisions Concerning the Plan

**Section 1.** The Plan is established for the benefit of the Employees and the objective of the Plan is to provid such Employees with paid vacations from work, thereby allowing the Employee to return to his work refreshed and reinvigorated and securing to the Individual Em ployer the performance of better and more efficient work The restrictions imposed by the Plan upon the use and enjoyment by the Employees of the moneys contributed by the Individual Employers are for the purpose of accomplishing this objective, and are voluntarily assumed and agreed to by the Employees for this purpose.

**Section 2.** In the establishment and maintenance of the Plan, and in the execution of this Agreement, the Union acts for and on behalf of the Employees and as their collective bargaining representatives and agent, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Plan shall be deemed to be and is the agreement or act of the Individual Employees, or Individual Employee, concerning or affected by such agreement or action.

**Section 3.** In the establishment and maintenance of the Plan, and in the execution of this agreement, the Employer acts for and on behalf of the Individual Employers who, at the time of the execution of this Agreement are, or during the term hereof become members of the Employer or any Signatory Association and for and on behalf of any other Individual Employers who have heretofore agreed or during the term hereof agree to comply with the wages, hours and working conditions of the Master Agreements. Every agreement or act of the Employer in connection with the establishment, maintenance and operation of the Plan shall be deemed to be and is the agreement or act of the Individual Employers, or Individual Employer, concerned or affected by such agreement or action.

**Section 4.** Contributions to the Fund, and any liquidated damages payable in connection therewith, shall be deemed to be, and shall be, a part of the wages due to the Employees with respect to whose work such payments are made. No Individual Employer shall have any right, title or interest in such payments, or any part thereof, and no part thereof shall revert to any such Individual Employer except to the extent permitted by ERISA. Insofar as consistent with the other provisions of this Agreement, the Contributions shall be treated and reported as a part of the compensation earned at

71

the time the work to which the Contributions pertain is performed, subject to the terms of this Agreement, and shall be deemed to be, and shall be treated as, subject to withholding tax and Social Security and Unemployment taxes as a part of the total compensation payable at the end of the Individual Employer's payroll period during which such work is performed. Such Contributions shall not be a part of the hourly wage rates for the purpose of computing overtime or reporting time or for any other purpose of the Collective Bargaining Agreement, or part of the "regular rate" or "basic hourly rate" for the purpose of the Federal Fair Labor Standards Act, the Contract Work Hours Standards Act or the Walsh-Healey Act or any other law, ordinance or regulation, except that if, consistent with the foregoing, such Contributions can be considered and treated as a part of the wages prevailing in the area for the purpose of the Federal Davis-Bacon Act and similar federal, state or local laws, ordinances or regulations, they shall be so considered and treated. If any administrative or judicial ruling holds that any of the provisions of this Agreement prevents or defeats any of the objectives stated in this section, the parties will forthwith enter into negotiations with regard to the amendment of this Agreement in such respects as may be necessary to accomplish the objectives so stated, consistently with the other objectives and purposes of this Agreement, and any such amendment shall be effective, insofar as practicable, as of the date of execution of this Agreement.

*(Amended December 31, 1975)*

**Section 5.** The Board of Trustees shall establish and maintain records of the Contributions received with respect to the work performed by each Employee and shall credit such Contributions to a vacation account for the Employee. Each Employee shall be at all times the owner of and entitled to the money credited to his individual vacation account, subject to the terms and conditions of this Trust Agreement and of any regulation or resolution of the Board pursuant to the authority given by this Trust Agreement. The account of each Employee shall be reflected in the records of the Fund but notwithstanding such records, the Board of Trustees shall have the right and authority to commingle such Contributions with any or all other Contributions received with respect to the work performed by other Employees and any or all other payments to the Fund, to deposit all or any part of such commingled Contributions and payments in one or more bank accounts, to invest and reinvest all or any portion of such Contributions and payments and to pay and distribute or cause the payment and distribution of such Contributions and payments in accordance with the provisions of this Trust Agreement. The Board may charge against and deduct from the vacation account of each Employee an administrative charge not exceeding $2.00 annually for use in defraying the cost of admin-

istering the Fund and Plan. Such portion of the Contributions as represents liquidated damages or expenses of collection and any interest or other return on the Contributions may also be used by the Board to defray such administrative cost or to provide for a reserve for the payment of such cost, and if not so used, shall be distributed equitably to the Employees and their beneficiaries at such times, upon such terms and in such proportions without regard to any specific vacation account or accounts, as the Board of Trustees may determine.

**Section 6.** The Board of Trustees shall have the power, in the name of the Fund, in the name of its joint delinquency committee or jointly with other funds, or otherwise as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court or otherwise, the prompt payment of contributions to the Fund, including payments due to delinquencies as provided in Section 10 of Article II, without being limited or restricted by any grievance or arbitration procedures provided in a Collective Bargaining Agreement, and to assert and enforce all priorities, lien rights, and other claims or rights with respect to any contributions or payments belonging to the Fund, this Trust or any of its beneficiaries, including the right to file priority and other claims in bankruptcy. If any Individual Employer defaults in the making of any such Contributions or payments and if the Board consults legal counsel with respect thereto, or files any suit or claim with respect thereto, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorneys fees, court costs and all other reasonable expenses incurred in connection with such suit or claim, including any and all appellate proceedings therein. Effective upon any such default or delinquency, the Employees, individually and collectively, assign to the Board for collection purposes, all of their right, title and interest in and to said Contributions and other payments, and confer upon and grant to the Board all rights of action, lien rights, preferences, priorities or other security or rights they may have in connection with or relating to such Contributions and payments, including the right and authority to file claims in bankruptcy, mechanics' liens and any and all other kinds of claims, demands or action. All delinquent Contributions collected by the Board shall be credited to the respective vacation accounts of the Employees to whom the Contributions pertain and all liquidated damages and reimbursement for attorneys fees and costs shall be credited to the administrative account of the Plan. No provision of this section, or of any section of this Agreement, shall interfere with or qualify the right of the Unions and their representatives to enforce compliance with the terms and provisions of any of the Collective Bargaining Agreements or to assist in the

72

73

processing of claims before the Labor Commissioner or any other claims for the payments of sums due the Plan.

*(Amended December 31, 1975)*

## ARTICLE IV

### Benefits

**Section 1.** On and after January 1, 1964, the Employees entitled to vacation benefits shall have the right to be paid the sums credited to their respective vacation accounts subject to the terms and conditions specified in this Article and subject to such further terms and conditions as may be provided by regulation or resolution of the Board of Trustees pursuant to the authority given by this Agreement.

**Section 2.** The period during which vacations shall be taken shall be from January 1, of each year through December 31, of the year (designated the "Vacation Year"). The sums credited to each vacation account for work performed during the period from August 1, of each calendar year to July 31, of the succeeding calendar year (designated the "Work Year") shall be distributed within a reasonable time before the start of the Vacation Year commencing with January 1 of the following calendar year. The distribution of vacation benefits for each Vacation Year shall be made by check mailed to Employees in a single mailing as directed by the Board of Trustees not later than December 31, immediately preceding the Vacation Year.

*(Amended February 20, 1968)*

**Section 3.** Each Employee who is currently employed shall give his employer at least 30 days' notice of the time at which he desires to go on vacation, unless the employer waives such notice or agrees to a shorter period of notice. The starting time and the duration of such vacation may be fixed by mutual agreement between the Individual Employer and the Employee. In fixing the starting time and duration of a vacation due consideration shall be given to prevailing conditions at the individual job site, but unless the Individual Employer agrees to the contrary, not more than 20% of the employer's Employees shall be on vacation at the same time.

**Section 4.** Each Employee who desires to go on a vacation shall complete such forms and comply with such procedures as may be prescribed by the Board of Trustees.

**Section 5.** It is the intent and purpose of the Plan, and of this Agreement, and a material part of the consideration for the making of Contributions to the Fund by Individual Employers, that the money in each vacation account shall be received by the Employee entitled thereto personally and shall in fact be used by him personally

to enable him to take a bona fide vacation from work, and for no other purpose. Accordingly, no Contributions due the Fund, and no moneys in vacation accounts established pursuant to the Plan, shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any Employee or any other persons, except as specifically provided in this Trust Agreement, and any such anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge shall be void and ineffective. The money credited to a vacation account shall only be subject to withdrawal at the times, in the manner and for the purposes specified in this Agreement.

*(Amended December 31, 1975)*

**Section 6.** The amount otherwise payable to an Employee as vacation benefits may be accumulated from year to year subject to the conditions provided herein, except that if the Board is not advised as to an address to which notices and checks may be sent to an Employee as herein provided within four calendar years after the start of a Vacation Year, or if the amount in such account is not withdrawn within such four calendar years period for any reason, the amount in such account, including any amount received after the start of such Vacation Year, with respect to such Vacation Year, shall be deemed contributed to the cost of maintaining the Plan in effect, and any check issued for any such amount shall be void and ineffective. All such amounts so contributed shall be transferred promptly to the administrative account of the Plan.

*(Amended February 20, 1968)*

**Section 7.** Each Employee entitled to benefits under the Plan shall file with the Board of Trustees a designation of the person to whom such benefits shall be paid in the event of the Employee's death. The Employee may change a beneficiary at any time by signing and filing a new designation. If an Employee dies, the amount credited to his vacation account shall be paid to the beneficiary named by the Employee, or if no beneficiary is named, or the beneficiary so named is dead, to the person or persons entitled thereto by law. Payment to such person or persons shall be a complete discharge from liabilities to the extent of such payment and the Board shall not be obligated to see to the application of money so paid. The person or persons claiming any such payment shall file with the Board a signed application for the payment and proof of the death of the Employee, and of the right of the applicant or applicants to receive such payment, in such forms as the Board shall prescribe, at any time after death and not later than the end of the period specified in Section 6 of this Article, and if such application and proof is not filed within such time, the person or persons entitled to the payment shall be deemed to have elected to contribute such amount to

74

75

## ARTICLE VI

### Functions and Powers of Board of Trustees

**Section 1.** The Board of Trustees acting jointly shall have the power to control and manage the assets, operations and administration of the Fund and the Plan as a fiduciary and shall exercise such authority with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent Board acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(a) appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund,

(b) enter into an agreement allocating among Trustees such specific responsibilities, obligations or duties as the Board shall determine, after receiving and considering the written reports and recommendations of the investment manager, if any, co-legal counsel, and the qualified public accountant engaged by the Fund, may be properly so allocated,

(c) designate pursuant to the same procedure persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under this Trust Agreement or the Plan,

(d) employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan, or

(e) do any one or more of the foregoing.

Any person or entity so appointed, designated or employed shall act solely in the interests of the participants and beneficiaries of the Fund and Plan.

*(Amended December 31, 1975)*

**Section 2.** All Contributions to the Plan or the Fund shall be due and payable at San Francisco, California and shall be paid to, received and held subject to the trust established by this Trust Agreement and all the terms and provisions hereof. The acceptance and cashing of any checks for such Contributions, and the disposition of the moneys covered thereby in accordance with this Trust Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours worked under said Agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment thereto.

**Section 3.** The Trustees shall have the power to demand and enforce the prompt payment of Contributions to the Fund, including payments due to delinquencies as

provided in Section 10 of Article II, and to assert and enforce all priorities, lien rights, and other claims or rights with respect to any Contributions or payments belonging to the Fund, this trust or any of its beneficiaries, including the right to file priority and other claims in bankruptcy. If any Individual Employer defaults in the making of such Contributions or payments and if the Board consults or causes to be consulted legal counsel with respect thereto, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorneys fees, court costs and all other reasonable expenses incurred in connection with such suit or claim, including any and all appellate proceedings therein.

**Section 4.** Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay or cause to be paid out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Plan.

(B) To establish and accumulate such reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund, including the maintenance in effect of the Plan.

(C) To provide a procedure for establishing and carrying out the funding policy and method consistent with the objectives of the Plan and the requirements of ERISA in adopting a plan of benefits and in amending the plan.

*(Amended December 31, 1975)*

(D) To employ such executive, administrative, clerical, secretarial and legal personnel and other employees and assistants, as may be necessary in connection with the administration of the Fund and the Plan and to pay or cause to be paid, out of the Fund, the compensation and necessary expenses of such personnel and assistants and the costs of office space, furnishings and supplies and other essentials required in such administration. If the Board is unable to agree upon the employment of an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select an attorney, who shall be directed to act jointly with each other in connection with the administration of the Fund, and the reasonable cost of such advice or services shall be paid from the Fund.

(E) To incur and pay or cause to be paid out of the Fund any other expense reasonably incidental to the administration of the Fund or the Plan.

(F) To compromise, settle, or release claims or demands in favor of or against the Fund on such terms and conditions as the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and pro-

cedure for the waiver of all or any part of the liquidated damages portion of any contribution or contributions upon such terms and conditions as the Board determines would be in the interests of the Fund and its participants and beneficiaries; provided, however, that this clause shall not excuse any violation of any of the Collective Bargaining Agreements.

*(Amended December 31, 1975)*

(G) If no investment manager is designated and appointed by the Board, to invest and reinvest or cause to be invested and reinvested the assets of the Fund, in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law.

*(Amended December 31, 1975)*

(H) To purchase, exchange, lease, mortgage or otherwise hypothecate, or otherwise acquire, or cause to be purchased, exchanged, leased, mortgaged or otherwise hypothecated, or otherwise acquired, any property, real, personal or mixed, on such terms as it may deem proper, and to execute and deliver or cause to be executed and delivered, any and all instruments in connection therewith.

(I) To sell, exchange, lease, convey or otherwise dispose of or to cause to be sold, exchanged, leased, conveyed or otherwise disposed of, any property of any kind forming a part of the Fund upon such terms as it may deem proper and to execute and deliver or cause to be executed and delivered, any and all instruments of conveyance or transfer in connection therewith.

(J) To construe the provisions of this Trust Agreement and the Plan and any such construction adopted by the Board in good faith shall be binding upon any and all parties or persons affected thereby.

(K) To pay or cause to be paid any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon or with respect to the Fund or the Plan.

(L) To prepare or cause to be prepared such reports, descriptions, summaries and other information as are or may be required by law or as the Board in its discretion deems necessary or advisable and to file and furnish such reports, descriptions, summaries and information to participants and their beneficiaries, Unions, the Employers, and individual employers, the Trustees, or other persons or entities, including government agencies, as required by law.

*(Amended December 31, 1975)*

(M) To maintain or cause to be maintained such bank account or accounts as may be necessary or advisable in

the administration of the Fund or the Plan, and to designate the person or persons authorized to sign checks and withdrawal orders on any such accounts.

(N) To adopt and prescribe reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Plan, governing the reporting of Contributions, the entitlement to vacation benefits, the method of applying for vacation benefits, and any and all other matters in connection with the Fund and the Plan.

(O) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement or the Plan.

Section 5. The Board of Trustees shall engage an independent qualified public accountant on behalf of all Plan participants as required by ERISA.

*(Amended December 31, 1975)*

Section 6. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from such companies as the Board shall determine.

*(Amended June 17, 1975)*

Section 7. All checks, drafts, vouchers or other withdrawals of money from the Fund shall be authorized in writing or countersigned by at least one Employer Trustee and one Employee Trustee.

Section 8. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plan. The Board may require the Employer, any Signatory Association, any Individual Employer, the Union, any affiliated local union, any Employee or any other beneficiary under the Plan to submit to it any information, data, report or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, that neither the Union nor any affiliated local union shall be required to submit lists of membership. The parties agree that they will use their best efforts to secure compliance with any reasonable requests of the Board for any such information, data, report or documents. Upon request in writing from the Board, any Individual Employer will permit a Trust Fund Auditor to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, not less than two (2) working days after such request, and to examine and copy such books, records, papers or reports of such Individual

80

81

Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund.

*(Amended August 1, 1974)*

Section 9. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once each year by an independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan, as is required by ERISA. The Board shall also make all other reports required by law. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time.

*(Amended December 31, 1975)*

Section 10. Compatible with equitable principles and to the extent that sound accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund and the Plan with the administrative activities of the governing board or boards of any other fund or funds, or plan or plans, established or to be established for employees in the building and construction industry in California to such extent and upon such terms as may be deemed necessary or desirable by the Board, including the entering into and performance of agreements or arrangements with any such board or boards providing for reciprocity or the transfer or exchange of credits or contributions between or among such funds or plans upon such terms as the Board may determine are for the best interests of the beneficiaries of the Plan.

### ARTICLE VII

### Procedure of Board of Trustees

Section 1. The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any two members of the Board, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of such meeting at least five days before the date set for the meeting. Any such notice of special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address as shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

82

Section 2. The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. Such minutes need not be verbatim.

Section 3. The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon the vote of a majority of all ten of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all ten Trustees without a meeting, as provided in section 5 of this Article. In the event of the absence of an Employer Trustee from a meeting of the Board, the Employer Trustees present at such meeting may vote on behalf of such absent Trustee and if such Employer Trustees cannot all agree as to how the vote of such absent Employer Trustee shall be cast then it shall be cast as the majority of them shall determine, or in the absence of such majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at such meeting may vote on behalf of such absent Trustee pursuant to the same method and in the same manner as above provided for Employer Trustees to cast the vote of any absent Employer Trustee.

Section 4. All meetings of the Board shall be held at the principal office of the Fund unless another place is designated from time to time by the Board.

Section 5. Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided such action has the concurrence of all of the Trustees.

### ARTICLE VIII

### General Provisions Applicable to Trustees

Section 1. The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent that such provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and thus to further the interests of the participants and beneficiaries of the Plan, it is the intent and purpose of the parties to provide herein for the maximum permissible protection and indemnification of such persons or entities from and against personal liability, loss, cost or expense as a result of such service, dealing or participation, and the provisions of this Arti-

83



TRAINING

AND

RETRAINING

## ARTICLE III

### Board of Trustees

**Section 1.** The Fund shall be administered by a Board of Trustees which shall consist of five (5) Trustees representing the Individual Employers and five (5) Trustees representing the Employees. The Trustees representing the Individual Employers shall be appointed in writing by the Employers, who are hereby irrevocably designated by each Individual Employer as his or its attorney's-in-fact for the purpose of appointing and removing Trustees and successor Trustees. The Trustees representing the Employees shall be appointed by the Union by an instrument in writing signed by the appropriate officers of the Union. The Employers and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees as herein provided to control and manage the operation and administration of the Fund and the Programs. Each of the current Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Agreement and assumes the duties, responsibilities and obligations of the Trustees as created and established by this Agreement and under applicable law. Any Trustee named hereafter shall do likewise by signing the Trust Agreement or a written acceptance thereof, in a form approved by and filed with the Board of Trustees.

*(Amended December 31, 1975)*

**Section 2.** The Trustees shall select one of their number to act as Chairman of the Board of Trustees and one to act as Co-Chairman, to serve for such period as the Trustees shall determine. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice versa.

**Section 3.** Each Trustee shall serve until his death, resignation or removal from office.

**Section 4.** A Trustee may resign at any time by serving written notice of such resignation upon the Secretary of the Board of Trustees at least thirty (30) days prior to the date on which such resignation is to be effective. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, and the Employers and the Union of such resignation.

*(Amended December 31, 1975)*

**Section 5.** Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the Employers and served on the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union

and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed and the Union or Employers, as the case may be, of such removal.

*(Amended December 31, 1975)*

**Section 6.** If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be appointed forthwith by an instrument in writing signed by the Employers. If any Employee Trustee dies, resigns, or is removed from office, a successor Trustee shall be appointed forthwith by an instrument in writing signed by the appropriate officers of the Union.

*(Amended December 31, 1975)*

**Section 7.** The initial Employee Trustees shall be:
SAL MINERVA
JAY JOHNSON
JOHN PETERSEN
PHIL THORPE
HARRY F WHITEHOUSE

The initial Employer Trustees shall be:
MORRIS K. DALEY
WALLACE BENSON
ERNEST L. CLEMENTS
CARL K. LAWRENCE
CLIFFORD SWENSON

## ARTICLE IV

### Functions and Powers of the Board of Trustees

**Section 1.** The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund and the Programs as a fiduciary and shall exercise such authority with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent Board acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(a) appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund,

(b) enter into an agreement allocating among Trustees such specific responsibilities, obligations or duties as the Board shall determine, after receiving and considering the written reports and recommendations of the investment manager, if any, co-legal counsel and of the qualified public accountant, engaged by the Fund, may be properly so allocated,

(c) designate pursuant to the same procedure persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Program,

(d) employ one or more persons to render advice with regard to any responsibilities the Board has under this Trust Agreement or the Programs, or

(e) do any one or more of the foregoing.

Any person or entity so appointed, designated or employed shall act solely in the interests of the participants and beneficiaries of the Fund and the Programs.
(*Amended February 18, 1969 and December 31, 1975*)

**Section 2.** All contributions to the Fund shall be due and payable at San Francisco, California, and shall be paid to, received and held by the Fund subject to this Trust Agreement and all the terms and provisions hereof. The acceptance and cashing of any checks for such contributions, and the disposition of the moneys covered thereby in accordance with this Trust Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours worked under said Agreement for which no contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment thereto. The Board of Trustees may direct that any such check may be a single check covering moneys payable to one or more other Funds and may join with the Boards of Trustees of such other Funds in instructing the bank or banks with regard to the allocation of the moneys covered by such check among the Funds. In such event the instructions so given shall be binding upon the bank or banks, the Individual Employer, the Employees, the Union, and all other parties hereto.
(*Amended February 18, 1969*)

**Section 3.** The Board of Trustees shall have the power, in the name of the Fund, in the name of its joint delinquency committee or jointly with other funds, or otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court or otherwise the prompt payment of contributions to the Fund, including payments due to delinquencies as provided in Section 9 of Article II, without being limited or restricted by any grievance or arbitration procedures provided in a Collective Bargaining Agreement, and to assert and enforce all priorities, lien rights, and other claims or rights with respect to any contributions or payments belonging to the Fund, this Trust or any of its beneficiaries, including the right to file priority and other claims in bankruptcy. If any Individual Employer defaults in the making of such contributions or payments and if the Board consults or causes to be consulted legal counsel with respect thereto,

or files or causes to be filed any suit or claim with respect thereto, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with such suit or claim, including any and all appellate proceedings therein.
(*Amended December 31, 1975*)

**Section 4.** The Board of Trustees shall establish and conduct a training program for the purpose of educating and training and retraining persons to perform work covered by the Collective Bargaining Agreements, to acquire new skills, to upgrade skills, and to develop and acquire techniques and skills necessary to meet technological changes in the construction industry, and shall have the power and duty to administer the Fund and to pay out the assets of the Fund for such purpose.

**Section 5.** Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay or cause to be paid out of the Fund the reasonable expenses incurred in the establishment of the Fund.

(B) To establish and accumulate such reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund.

(C) To provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the Programs and the requirements of ERISA in adopting a program of benefits and in amending the program.
(*Amended December 31, 1975*)

(D) To employ such executive, accounting, administrative, technical, educational, clerical, secretarial and legal personnel and other employees and assistants as may be necessary in connection with the administration of the Fund, and to pay or cause to be paid, out of the Fund, the compensation and necessary expenses of such personnel and assistants and the cost of office space, furnishings and supplies and other essentials required in such administration. If the Board is unable to agree upon the employment of an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select an attorney who shall be directed to act jointly with each other in connection with the administration of the Fund, and the reasonable cost of such advice or services shall be paid from the Fund.
(*Amended December 31, 1975*)

(E) To incur and pay or cause to be paid out of the Fund any other expense reasonably incidental to the administration of the Fund.

(F) To compromise, settle, or release claims or demands in favor of or against the Fund on such terms and conditions as the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the waiver of all or any part of the liquidated damages portion of any Contribution or Contributions upon such terms and conditions as the Board determines would be in the interests of the Fund and its participants and beneficiaries; provided, however, that this clause shall not excuse any violation of any of the Collective Bargaining Agreements.

*(Amended December 31, 1975)*

(G) If no investment manager is designated and appointed by the Board, to invest and reinvest or cause to be invested and reinvested the assets of the Fund, in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law.

*(Amended December 31, 1975)*

(H) To enter into contracts in its own name or in the name of the Fund, to terminate, modify or renew any such contracts subject to the provisions of the Trust, and to exercise and claim all rights and benefits granted to the Board or the Fund by any such contracts.

*(Amended February 18, 1969)*

(I) To sell, exchange, lease, convey or otherwise dispose of or to cause to be sold, exchanged, leased, conveyed or otherwise disposed of, any property of any kind forming a part of the Fund upon such terms as it may deem proper and to execute and deliver or cause to be executed and delivered, any and all instruments of conveyance or transfer in connection therewith.

(J) To construe the provisions of this Trust Agreement and any such construction adopted by the Board in good faith shall be binding upon any and all parties or persons affected thereby.

(K) To pay or cause to be paid any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon or with respect to the Fund.

(L) To prepare or cause to be prepared such reports, descriptions, summaries and other information as are or may be required by law or as the Board in its discretion deems necessary or advisable and to file and furnish such reports, descriptions, summaries and other information to participants and their benefici-

aries, Unions, the Employers and individual employers, the Trustees, or other persons or entities, including government agencies, as required by law.

*(Amended December 31, 1975)*

(M) To maintain or cause to be maintained such bank account or bank accounts as may be necessary or advisable in the administration of the Fund and to designate the person or persons authorized to sign checks and withdrawal orders on any such accounts.

(N) To adopt and prescribe reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Programs, governing the reporting of contributions, the entitlement to program benefits and any and all other matters in connection with the Fund.

(O) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement.

**Section 6.** The Board of Trustees shall engage an independent qualified public accountant on behalf of all Plan participants as required by ERISA.

*(Amended December 31, 1975)*

**Section 7.** The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from such companies as the Board shall determine.

*(Amended June 17, 1975)*

**Section 8.** The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund. The Board may require the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, or any Employee to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, that the Union and Local Unions shall not be required to submit lists of membership. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, report or documents. Upon request in writing from the Board, any Individual Employer will permit a Trust Fund Auditor to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, not less than two (2) working days after such request, and to examine and copy such books, rec-

106

107

ords, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund.

*(Amended August 1, 1974)*

Section 9. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Program participants who shall conduct such an examination of any financial statements of the Fund and the Program, and of other books and records of the Fund and Program as is required by ERISA. The Board shall also make all other reports required by law. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time.

*(Amended December 31, 1975)*

Section 10. Compatible with equitable principles and to the extent that sound accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund with the administrative activities of the governing board or boards of any other fund or funds, established or to be established for employees in the building and construction industry to such extent and upon such terms as may be deemed necessary or desirable by the Board, including the entering into and performance of agreements or arrangements with any such board or boards providing for reciprocity or transfer or exchange of contributions between or among such funds or upon such terms as the Board may determine are for the best interests of the administration of the Fund.

*(Amended January 1, 1973)*

## ARTICLE V

### Procedure of Board of Trustees

Section 1. The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any four members of the Board, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of such meeting at least five days before the date set for the meeting. Any such notice of special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address as shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice, in writing, shall be a valid meeting without the giving of any notice.

108

Section 2. The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. Such minutes need not be verbatim.

Section 3. The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon the vote of a majority of all ten of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all ten trustees without a meeting, as provided in Section 5 of this Article. In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present as such meeting may vote on behalf of such absent Trustee and if such Employer Trustees cannot all agree as to how the vote of such absent Employer Trustee shall be cast, then it shall be cast as the majority of them shall determine or, in the absence of such majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at such meeting may vote on behalf of such absent Trustee pursuant to the same method and in the same manner as above provided for Employer Trustees to cast the vote of any absent Employer Trustee.

Section 4. All meetings of the Board shall be held at the principal office of the Fund unless another place is designated from time to time by the Board.

Section 5. Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided such action has the concurrence of all of the Trustees.

## ARTICLE VI

### General Provisions Applicable to Trustees

Section 1. The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent that such provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and thus to further the interests of the participants and beneficiaries of the Plan, it is the intent and purpose of the parties to provide herein for the maximum permissible protection and indemnification of such persons or entities from and against personal liability, loss, cost or expense as a result of such service, dealing or participation, and the provisions of this

109